NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEITH P. SEQUEIRA, *et al.*,

    Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, *et al.*,

    Defendants.

Civil Action No. 25-01929 (RK) (JTQ)

**MEMORANDUM ORDER**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon two applications to proceed *in forma pauperis*, (ECF Nos. 2, 3), filed by *pro se* Plaintiffs Keith P. Sequeira ("Mr. Sequeira") and Helen D. Sequeira ("Mrs. Sequeira") (together, "Plaintiffs"), along with a Complaint, ("Compl.," ECF No. 1). For the reasons set forth below, the Court **GRANTS** Plaintiffs' applications to proceed *in forma pauperis* and **DISMISSES** the Complaint without prejudice.

**I.    BACKGROUND**

    This case is the most recent in a long lineage of actions involving foreclosures upon Plaintiffs' home.[1] Plaintiffs have filed a 102-page,[2] 217-paragraph, 255-count Complaint suing

---

[1] *See Sequeira v. JPMorgan Chase Bank, N.A.*, No. 16-05278, ECF No. 62 (D.N.J. Oct. 10, 2019) (stipulated dismissal); *Metro. Life Ins. Co. v. Sequeira*, No. 21-20618, 2022 WL 1443732 (D.N.J. May 6, 2022) (granting motion to remand); *In re Sequeira*, No. 23-3262, 2024 WL 909813 (3d Cir. Mar. 4, 2024) (denying petition for mandamus); *Sequeira v. Fed. Deposit Ins. Corp.*, No. 23-2095, 2024 WL 3835561 (D.D.C. Aug. 15, 2024) (granting motion to dismiss). *See also JPMorgan Chase Bank, N.A. v. Sequeira*, No. MON–F–9377–09 (N.J. Super. Ct. Ch. Div.) ("Foreclosure-I"); *LSF8 Master Participation Trust v. Sequeira*, No. F–17494–15 (N.J. Super. Ct. Ch. Div.) ("Foreclosure-II"); *Metro. Life Ins. Co. v. Sequeira*, No. SWC–F–005810–21 (N.J. Super. Ct. Ch. Div.) ("Foreclosure-III").

[2] While the substance of the Complaint runs 83 pages, the pleading totals 102 pages on CM/ECF due to the Complaint's lengthy Table of Contents and Table of Authorities.

nineteen Defendants that include banks, insurance companies, law firms, and employees of each.[3]

While exceedingly difficult to discern, it appears Plaintiffs' claims are connected to a missing property insurance check Plaintiffs were supposed to receive to repair water damage in their New Jersey home. (Compl. ¶¶ 20, 21 nn. 31, 32.) On May 4, 2024, Defendant CSAA[4] issued a check for $17,558.32 (the "Check") to Plaintiffs and Defendant Shellpoint, Plaintiffs' mortgage servicer. (*Id.* ¶¶ 4(e), 33.) Plaintiffs mailed the Check to Defendant Livorsi, an attorney at Defendant Day Pitney whom Plaintiffs understood to be Shellpoint's legal counsel. (*Id.* ¶ 78, 80.) Plaintiffs requested Ms. Livorsi "arrange for the Check to be endorsed as appropriate and returned to [Plaintiffs] at [the] very earliest convenience."[5] (*Id.* ¶ 85.)

Following a delay in response, Plaintiffs filed a grievance[6] against Ms. Livorsi with the Defendant New Jersey Office of Attorney Ethics. (*Id.* ¶ 98.) Day Pitney[7] then contacted Plaintiffs and explained it did not represent Shellpoint when Plaintiffs mailed the Check. (*Id.* ¶ 93.)

---

[3] Defendants are Metropolitan Life Insurance Company ("MetLife"), Day Pitney LLP ("Day Pitney"), Christine A. Livorsi, Wael M. Amer, NewRez LLC (f/k/a New Penn Financial LLC) d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), Hill Wallack LLP ("Hill Wallack"), Michael Kahme, Eric P. Kelner, James G. O'Donohue, the New Jersey Office of Attorney Ethics, Jason D. Saunders, CSAA General Insurance Company ("CSAA"), Fallon McCormack, Shirley A. Ellis, Bank of America Corporation ("BofA"), Citibank, N.A. ("Citi"), FleetBoston Financial Corporation ("Fleet"), the New Jersey Department of Insurance, and Robert Anderson. (Compl. ¶ 4(a)–(s).)

[4] Plaintiffs allege they communicated with Defendants Fallon McCormack and Shirley A. Ellis, employees of CSAA, about their insurance claim and subsequent insurance check. (Compl. ¶ 4(m)–(n) nn.16–17.)

[5] Plaintiffs explain that their mortgage agreement purportedly provided that property insurance payouts would be applied "to restoration or repair of the Property if the restoration or repair is economically feasible and [the lender's] security is not lessened." (Compl. ¶ 94.)

[6] Plaintiffs allege they filed two separate grievances with the Office of Attorney Ethics. The first was against Defendant Livorsi and Defendants Kahme and Kelner. (Compl. ¶ 98.) Defendants Kahme and Kelner are both attorneys at Defendant Hill Wallack, which represents MetLife in its foreclosure action against Plaintiffs. (Compl. ¶ 4(f)–(h) ns.9–11.) Defendant O'Donohue, also an attorney at Hill Wallack, responded to the first grievance on behalf of Mr. Kahme and Mr. Kelner. (*Id.* ¶¶ 4(i) n.12, 102.) The very next day, Plaintiffs filed a grievance against Mr. O'Donohue. (*Id.* ¶ 103.) The Office of Attorney Ethics allegedly declined to docket each grievance. (*Id.* ¶ 108.) Plaintiffs have sued Defendant Jason D. Saunders, an attorney with the Office of Attorney Ethics, for this failure to docket the grievances. (Compl. ¶ 4(k) n.14.)

[7] Day Pitney also employs Wael M. Amer, another named Defendant in this action. Plaintiffs note in the Complaint that "[a]ll references to Amer include references to [Defendant] Livorsi." (Compl. ¶ 4(d) n.7.)

Nonetheless, Day Pitney allegedly told Plaintiffs it forwarded the Check to Shellpoint "on or about May 22, 2024." (*Id.* ¶ 95.) Shellpoint reportedly had no record of the Check despite CSAA allegedly advising that the Check cleared on May 31, 2024. (*Id.* ¶ 138–139.)

CSAA provided Plaintiffs a courtesy copy of the cleared Check which appeared to "fraudulently" indicate that Plaintiffs *and* Shellpoint had endorsed the Check. (*Id.* ¶ 144(g).) By conducting a Google search of the routing numbers provided by CSAA, Plaintiffs purportedly determined the Check was also endorsed by Defendant Citi and either Defendant Fleet or Defendant BofA. (*Id.* ¶ 144(h).) Plaintiffs allege that to date they have not been able to repair their home in the absence of the Check's funds, leading to additional water damage throughout the summer of 2024.[8] (*Id.* ¶¶ 36, 38, 43, 45, 49.)

Plaintiffs' claims—which are not in a discrete section of the pleading, but rather appear intermittently throughout the Complaint's recitation of facts—primarily arise out of state law. (*See, e.g.*, *id.* at 12–28 (alleging approximately 40 counts pursuant to N.J.S.A. § 17B:30-13.1 (unfair claim settlement practices)), 80–81 (alleging approximately 70 counts pursuant to N.J.S.A. § 2C:41-1, *et seq.* (New Jersey Racketeer Influenced and Corrupt Organizations Act)).) With respect to federal law, Plaintiffs allege two counts under the Truth in Lending Act ("TILA") (15 U.S.C. § 1601, *et seq.*), approximately 40 counts under the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2601, *et seq.*), and approximately 50 counts under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961, *et seq.*). (*Id.* at 9, 32–33, 36, 49, 51, 55, 64–69.) Plaintiffs initially filed this action in the United States District Court for the District of Columbia. *See Sequeira v. Metro. Life Ins. Co.*, No. 24-03527 (D.D.C.). The District

---

[8] In October 2024, CSAA denied Plaintiffs' claim for supplemental damage. (*Id.* ¶ 63.) Plaintiffs thereafter filed a complaint with the Defendant New Jersey Department of Insurance ("DOI"); the complaint was investigated by Defendant Robert Anderson of the DOI and appears to have ultimately been dismissed. (*Id.* ¶¶ 4(r)–(s) n.20, 70.)

Court for the District of Columbia determined that venue was proper in New Jersey and transferred the case to this District in the interest of justice. (ECF No. 6.) The case was thereafter assigned to the Undersigned on March 21, 2025.

With their Complaint, Plaintiffs also filed two separate applications to proceed *in forma pauperis*. (*See* ECF Nos. 2, 3.) The applications indicate the couple has a 21-year-old son who relies on the couple for support. (ECF No. 2 at 3; ECF No. 3 at 3.) Mr. Sequeira receives $1,281 per month in retirement income. (ECF No. 2 at 2.) Mrs. Sequeira receives $2,504 per month as an employee at National Vision, Inc. in Long Branch, New Jersey. (ECF No. 3 at 2.) Plaintiffs hold a joint checking account with $670 deposited. (ECF No. 2 at 2; ECF No. 3 at 2.) They also own a home (for which they list a negative value of -$45,455), and Mrs. Sequeira pays $369 per month towards the couple's car, a 2023 Nissan Rogue. (ECF No. 2 at 3; ECF No. 3 at 3, 4.) Both Plaintiffs list a number of other monthly expenses, including $1,254 in home-mortgage payments, $508 for food, $290 in medical and dental expenses, and $190 in credit card payments. (ECF No. 2 at 4; ECF No. 3 at 4.) Mr. Sequeira's monthly expenses total $3,072 (ECF No. 2 at 5), and Mrs. Sequeira's monthly expenses total $3,441 (ECF No. 3 at 5).[9]

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(a), the District Court may authorize a plaintiff to proceed *in forma pauperis* and order a complaint to be filed without requiring the prepayment of filing fees. The statute "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). However, to guard against potential "abuse" of "cost-free access to the federal courts," *id.* (citing *Denton v. Hernandez*, 504 U.S. 25, 29 (1992)), section 1915(e)

---

[9] Mrs. Sequeira has higher monthly expenses because she pays for the couple's Nissan Rogue. (ECF No. 3 at 4.)

empowers the District Court to dismiss an *in forma pauperis* complaint if it "is frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e).

Thus, the District Court engages in a two-step analysis when considering a complaint filed with an *in forma pauperis* application: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a). . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse,* No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)).

### III. DISCUSSION

#### A. IN FORMA PAUPERIS APPLICATION

In order to proceed *in forma pauperis,* Section 1915(a) requires Plaintiffs to submit "an affidavit stating all income and assets, the plaintiff's inability to pay the filing fee, the 'nature of the action,' and the 'belief that the [plaintiff] is entitled to redress.'" *Martinez v. Harrison*, No. 23-3513, 2023 WL 5237130, at *1 (D.N.J. Aug. 15, 2023) (alteration in original) (quoting 28 U.S.C. § 1915(a)).

Plaintiffs' *in forma pauperis* applications indicate that both of their monthly expenses are higher than their monthly incomes. Mr. Sequeira's monthly expenses, which total $3,072, are more than double his monthly income of $1,281. (ECF No. 2 at 2, 5.) Mrs. Sequeira has a monthly income of $2,504 but monthly expenses totaling $3,441. (ECF No. 3 at 2, 5.) The Court finds that this demonstrates that Plaintiffs are each unable to pay the $405 filing fee. Therefore, Plaintiffs have pled their circumstances with sufficient particularity, and the Court **GRANTS** Plaintiffs' *in forma pauperis* applications. (ECF Nos. 2, 3.)

### B. REVIEW OF COMPLAINT

Having granted Plaintiffs' applications to proceed *in forma pauperis*, the Court turns to reviewing the merits of Plaintiffs' Complaint. The Court may dismiss any claims that are "(1) . . . frivolous or malicious; (2) fail[] to state a claim upon which relief may be granted; or (3) seek[] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). A court must be mindful to hold a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A complaint's claims must also be supported by "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each averment must be 'simple, concise, and direct.'" *Washington v. Warden SCI-Greene*, 608 F. App'x 49, 52 (3d Cir. 2015) (quoting Fed. R. Civ. P. 8(d)(1)). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). At its core, the purpose of a pleading is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a court should liberally construe the pleadings of a pro se plaintiff, the complaint must still comply with the pleading requirements of Rule 8." *Prelle v. United States*, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 246 (3d Cir. 2013)).

Plaintiffs' sprawling 102-page, 217-paragraph, 255-count Complaint flouts Rule 8's requirement that allegations be "simple, concise, and direct."[10] Fed. R. Civ. P. 8(d)(1); *see Rogers v. Morrice*, No. 12-7910, 2013 WL 356196, at *2 (D.N.J. Jan. 29, 2013) ("Although the Complaint uses plain language, and Plaintiff provides a Table of Contents . . . the Complaint's thicket of background detail and evidentiary matter makes this a case where length and complexity may doom a complaint by obfuscating the claim's essence." (internal quotation marks omitted)). Not only is the format of the Complaint difficult to follow (i.e., exact counts against Defendants are found buried amongst Plaintiffs' myriad of factual allegations), but also the allegations are reminiscent of those found within shotgun pleadings. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).[11] There are four categories of shotgun pleadings:

> (1) Pleadings that "contain multiple counts where each count adopts the allegations of all preceding counts;"
>
> (2) Pleadings that "are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;"
>
> (3) Pleadings that "do not separate each cause of action or claim for relief into its own distinct count;" and
>
> (4) Pleadings that "assert multiple claims against multiple defendants without specifying which of them are responsible for which acts or omissions."

*Patrick*, 2024 WL 2077036, at *4.

---

[10] The United States District Court for the District of Columbia made a similar finding with respect to a proposed amended complaint Plaintiffs sought to file in connection with their related action against the Federal Deposit Insurance Corporation:

> The Sequeiras' proposed second amended complaint is neither short nor plain. It is over 200 pages long. [*Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004)] (finding that the district court properly struck a 119-page complaint that was "repetitive" and "discursive"). And it raises new claims against dozens of new defendants, sweeping in virtually everyone who had anything to do with the Sequeiras' mortgage, including the Sequeiras' prior attorneys, various financial institutions, and employees affiliated with those institutions.

*Sequeira*, 2024 WL 3835561, at *3 (internal citations omitted) (denying motion for leave to amend).

[11] Courts in this District look to "well-developed Eleventh Circuit case law on shotgun pleadings." *Patrick v. Equifax Info. Servs., LLC*, No. 23-4092, 2024 WL 2077036, at *3 (D.N.J. May 9, 2024).

The Complaint here falls primarily within categories (3) and (4). Plaintiffs often combine causes of action within the same set of counts; for example, at "Counts LXXXIV–XCVII" Plaintiffs plead both RESPA and state law claims within the same paragraph 97 of the Complaint. (*See also* Compl. ¶ 68 (pleading violations of three separate state statutes within one set of counts).) Indeed, because Plaintiffs often group counts together (*see id.* ¶ 97), it is impossible to know which count belongs to a particular claim when there are multiple claims alleged in the same paragraph.

Plaintiffs also often allege claims against "Defendants" without specification as to which Defendants the claims are directed at. For example, Plaintiffs allege their RESPA and TILA claims against "Defendants" as a whole. (*See, e.g., id.* ¶¶ 15, 87, 97, 135, 141, 150.) However, Plaintiffs presumably did not intend to bring these claims against all Defendants, as the majority of Defendants are neither lenders nor service providers to Plaintiffs. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 764 (3d Cir. 2009) ("Statutes like RESPA are enacted to protect consumers from unfair business practices by giving consumers a private right of action against service providers" (citation omitted)); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998) ("Congress enacted TILA to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices."). Similarly, Plaintiffs' federal RICO claims allege predicate acts of racketeering by a vague group of "RICO Defendants" as a whole. (Compl. ¶ 196); *see Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995) ("A common thread running throughout § 1962 is that an injured party must demonstrate that the defendant was engaged in a 'pattern of racketeering activity.'"). The lack of explicit references to named Defendants makes it impossible to give these Defendants "fair notice" of the claims asserted and the grounds upon which those claims rest. *See Twombly*, 550 U.S. at 555.

Even where Plaintiffs' RICO claims *do* name individual Defendants, the claims often adopt the allegations of preceding counts in a conclusory fashion, situating such allegations in shotgun

pleading category (1). *See Patrick*, 2024 WL 2077036, at *4. For example, at Counts "CXXXI–CXXXII" Plaintiffs simply write, "Plaintiffs assert for the foregoing reasons that MetLife has profited from racketeering activities with respect to the Claim and the Check in violation of 18 U.S.C. § 1962(a) and 18 U.S.C. 1962(b)."[12] (Compl. ¶ 164.) Plaintiffs' voluminous and difficult-to-follow Complaint fails to effectuate the "clarity and brevity" directed by the Federal Rules. *In re Westinghouse Sec. Litig.*, 90 F.3d at 702; *see Blount v. TD Bank, N.A.*, No. 12-18805, 2022 WL 4354640, at *2 (D.N.J. Sept. 20, 2022) (quoting *Pilkey v. Lappin*, No. 05-5314, 2006 WL 1797756, at *1 (D.N.J. June 26, 2006)) ("A complaint that reads like a plaintiff's personal 'diary' and is 'rambling and confusing' does not meet the standard under Rule 8(a)(2)."). Accordingly, the Complaint is **DISMISSED** without prejudice.

      **THEREFORE**, it is on this 6th day of May, 2025, **ORDERED** that:

1. Plaintiffs' applications to proceed *in forma pauperis*, (ECF Nos. 2, 3), are **GRANTED**;

2. Plaintiffs' Complaint, (ECF No. 1), is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e);

3. Plaintiffs may have this case reopened within 30 days of the date of entry of this Memorandum Order by filing an amended complaint;

---

[12] While resting this dismissal on Rule 8 grounds, the Court observes that Plaintiffs' RICO claims also fail under Rule 9(b). *See Virginia Sur. Co. v. Macedo*, No. 08-5586, 2010 WL 3429530, at *5 (D.N.J. Aug. 27, 2010) ("[W]here a RICO plaintiff relies upon mail and wire fraud as the predicate acts of racketeering, the fraud allegations must be pled with particularity in accordance with Rule 9(b)."); *see Kolar v. Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."). Plaintiffs vaguely allege predicate acts of mail and wire fraud that involve some unknown group of Defendants "coerc[ing] Plaintiffs into making inflated monthly payments under duress" and "mak[ing] thirty-two (32) false statements in certification and submission." (Compl. ¶ 196.) These allegations fail to "state with particularity the circumstances constituting fraud" as required by Rule 9(b). *Wright v. Ocwen Loan Servicing, LLC*, No. 16-8989, 2019 WL 4013954, at *7 (D.N.J. Aug. 26, 2019) (quoting *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017)).

4. Upon receipt of an amended complaint within the time allotted by this Court, the Clerk will be directed to reopen this case, and the Court will screen the amended complaint pursuant to 28 U.S.C. § 1915(e);

5. The Summons shall not issue prior to the Court conducting a screening of the amended complaint pursuant to 28 U.S.C. § 1915(e);

6. The Clerk's Office is directed to **CLOSE** this matter; and

7. The Clerk's Office shall serve on Plaintiffs by regular U.S. mail this Memorandum Order to their address of record.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE