NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEITH P. SEQUEIRA et al.,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY et al.,<br><br>Defendants. | Civil Action No. 25-1929 (RK) (JTQ)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiffs Keith P. Sequeira and Helen D. Sequeira's ("Plaintiffs") First Amended Complaint. ("FAC," ECF No. 12.) The Court must *sua sponte* screen Plaintiffs' FAC pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth below, the Court **DISMISSES** the FAC with prejudice.

## I.    BACKGROUND

### A. PROCEDURAL BACKGROUND

On December 11, 2024, Plaintiffs commenced this suit in the United States District Court for the District of Columbia. (ECF No. 1); *see Sequeira v. Metro. Life Ins. Co.*, No. 24-03527 (D.D.C.). The case was transferred to the District of New Jersey pursuant to 28 U.S.C. § 1406(a), (ECF No. 6), and this Court granted Plaintiffs' applications to proceed *in forma pauperis* and dismissed their Complaint without prejudice, ("First Screening Opinion," ECF No. 11). *Inter alia*, the Court observed that Plaintiffs' 102-page, 217-paragraph, 255-count Complaint "flout[ed] Rule 8's requirement that allegations be 'simple, concise, and direct.'" (*Id.* at 7.)

In its First Screening Opinion, the Court explained that "[n]ot only [was] the format of the Complaint difficult to follow (i.e., exact counts against Defendants [were] found buried amongst Plaintiffs' myriad of factual allegations), but also the allegations [were] reminiscent of those found within shotgun pleadings." (*Id.*) Thus, the Court dismissed the Complaint on Rule 8 grounds because "Plaintiffs' voluminous and difficult-to-follow Complaint fail[ed] to effectuate the 'clarity and brevity' directed by the Federal Rules." (*Id.* at 9.) The Court permitted Plaintiffs to file an amended pleading within 30 days and directed that, once it was filed, the Court would re-screen the amended complaint. (*Id.*) Plaintiffs timely filed their FAC.

## B. FACTUAL BACKGROUND

Plaintiffs' FAC spans 178 pages, contains 554 paragraphs, 183 footnotes, and 311 counts, and names 25 Defendants.[1] (*See generally* FAC.) The Court notes at the outset that this is significantly more voluminous than Plaintiffs' initial, dismissed Complaint. *See infra* Section III. The facts and claims set forth in the FAC largely mirror those alleged in the original Complaint— and suffer from essentially the same deficiencies, and sometimes even more so, as if the initial Complaint and the Court's prior Opinion did not exist. (*See generally* ECF Nos. 1, 11; FAC.) As best the Court can discern, Plaintiffs' claims primarily concern (1) a missing property insurance

---

[1] Plaintiffs sue three banks (Bank of America Corporation ("Bank of America"), Citibank, N.A. ("Citibank"), and FleetBoston Financial Corporation ("FleetBoston")); two insurance companies (Metropolitan Life Insurance Company ("MetLife") and CSAA General Insurance Company ("CSAA")); two law firms (Day Pitney LLP ("Day Pitney") and Hill Wallack LLP ("Hill Wallack")); four entities that allegedly owned and/or serviced Plaintiffs' mortgage (NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), LSF8 Master Participation Trust ("LSF8"), Caliber Home Loans ("Caliber"), and Goldman Sachs Mortgage Company ("Goldman Sachs")); three governmental entities (the New Jersey Department of Insurance ("DoI"), Monmouth County Sheriff's Office ("MCSO"), and New Jersey Office of Attorney Ethics ("OAE")); Monmouth County Sheriff Shaun Golden; seven attorneys (Christine A. Livorsi, Wael M. Amer, and Joy H. Sperling (Day Pitney attorneys); Michael Kahme, Eric P. Kelner, and James J. O'Donohue (Hill Wallack attorneys); and Jason D. Saunders (OAE attorney)); and three employees of other Defendants (Fallon McCormack and Shirley A. Ellis (CSAA employees) and Robert Anderson (DoI employee)). (FAC ¶ 17(a)–(y).) Plaintiffs also sue five unnamed MCSO employees. (*Id.* ¶ 17(z).)

2

check Plaintiffs were supposed to receive to repair water damage in their New Jersey home and (2) the subsequent (but unrelated) sheriff's sale and foreclosure upon that home.[2] The following facts are derived from Plaintiffs' FAC and accepted as true only for purposes of screening the FAC pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g., Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

### i.    Insurance Check Allegations

On December 3, 2023, Plaintiffs' residence, located in Middletown, New Jersey, sustained water damage. (FAC ¶¶ 50, 51 n.75.) Plaintiffs filed a claim two days later under their hazard insurance policy issued by Defendant CSAA, and on April 24, 2024, following negotiations, Plaintiffs accepted CSAA's settlement offer to resolve their insurance claim. (*Id.* ¶¶ 17 n.21; 51; 53–60.) On May 4, 2024, Plaintiffs received a check for $17,558.32 (the "Check"), which was made jointly payable to Plaintiffs and to their mortgage servicer, Defendant Shellpoint. (*Id.* ¶ 61.) Plaintiffs had previously requested that the money be sent directly to GS Roofing and Siding, Inc., the entity that was apparently going to repair Plaintiffs' roof and the water damage. (*Id.* ¶ 58.)

On May 6, 2024, following a telephone conversation with a Shellpoint representative, Plaintiffs sent the Check via Priority Mail to Defendant Christina A. Livorsi, an attorney at the law

---

[2] This case is the most recent in a long line of actions involving foreclosures upon Plaintiffs' home. Plaintiffs cite and refer to the state court foreclosure actions as Foreclosure I–III. *See JPMorgan Chase Bank, N.A. v. Sequeira*, No. MON–F–9377–09 (N.J. Super. Ct. Ch. Div.) ("Foreclosure-I"); *LSF8 Master Participation Tr. v. Sequeira*, No. F–17494–15 (N.J. Super. Ct. Ch. Div.) ("Foreclosure-II"); *Metro. Life Ins. Co. v. Sequeira*, No. SWC–F–005810–21 (N.J. Super. Ct. Ch. Div.) ("Foreclosure-III"). Plaintiffs unsuccessfully attempted to remove the last of these actions to the District of New Jersey. *See Metro. Life Ins. Co. v. Sequeira*, No. 21-20618, 2022 WL 1443732 (D.N.J. May 6, 2022) (granting motion to remand); *see also In re Sequeira*, No. 23-3262, 2024 WL 909813 (3d Cir. Mar. 4, 2024) (denying petition for writ of mandamus). They also brought separate suits related to the foreclosures and the handling of their mortgage. *See Sequeira v. JPMorgan Chase Bank, N.A.*, No. 16-05278, ECF No. 62 (D.N.J. Oct. 10, 2019) (stipulated dismissal); *Sequeira v. FDIC*, No. 23-2095, 2024 WL 3835561 (D.D.C. Aug. 15, 2024) (granting motion to dismiss), *aff'd*, No. 24-5209, 2025 WL 2426914 (D.C. Cir. Aug. 22, 2025) (per curiam).

In the instant action, Plaintiffs sue multiple Defendants involved in the previously filed, above cases: LSF8 and MetLife, which brought foreclosure actions against Plaintiffs (Foreclosure-II and -III, *supra*), and Day Pitney, Hill Wallack, and attorneys at those firms, who purportedly represent LSF8 and/or MetLife in those actions. (FAC ¶ 17 & nn.6–11, 15–18.)

3

firm Defendant Day Pitney.[3] (*Id.* ¶¶ 16 n.9; 81–82.) When Plaintiffs had not received the Check proceeds by May 31, 2024, they emailed Livorsi and several other Defendants.[4] (*Id.* ¶ 89.) Plaintiffs explained that the money was needed for "urgently required" repairs "to prevent further [water] damage" and stated that, if "the appropriately endorsed Check" was not received by June 7, 2024, they would "report each of Counsel to the Office of Attorney Ethics and pursue our claims for unjust enrichment against each of the entities and individuals named herein." (*Id.*) Plaintiffs then filed two grievances with the Office of Attorney Ethics ("OAE") on June 8 and 13, 2024.[5] (*Id.* ¶¶ 136, 141.)

On June 28, 2024, Plaintiffs received an email response stating that Day Pitney did not represent Shellpoint and had forwarded the Check to Shellpoint about a month prior. (*Id.* ¶¶ 94, 96.) On July 19, 2024, Plaintiffs learned from Defendant McCormack (their CSAA claims adjuster) that the Check had cleared on May 31, 2024, even though neither of the Plaintiffs had endorsed it. (*Id.* ¶ 64.) Plaintiffs called Shellpoint, the other payee the Check had been made out to alongside Plaintiffs, and Shellpoint advised that it had no record of the Check or of any claim associated with it. (*Id.* ¶ 106.) A week later, on July 26, 2024, McCormack emailed a copy of the

---

[3] Plaintiffs say they called Shellpoint for instructions "about the procedure to have the Check endorsed to Plaintiffs or to GS Roofing." (FAC ¶ 81.) Plaintiffs allege they "were told to contact Shellpoint's 'Counsel'" and, in the next paragraph, allege that they "sent Livorsi the check." (*Id.* ¶¶ 81–82.) Elsewhere, Plaintiffs describe Livorsi as a Day Pitney attorney who "represents MetLife . . . in Foreclosure-III and . . . represented LSF8 in Foreclosure-II," i.e., they do not allege she is counsel for Shellpoint. (*Id.* ¶ 16 n.9.) Plaintiffs thus do not connect the dots between the alleged instruction that they "contact" counsel for *Shellpoint* and their decision to subsequently mail the Check to counsel for Defendant MetLife and/or Defendant LSF8.

[4] As explained below, Plaintiffs collectively refer to groups of Defendants throughout their FAC. Here, they allege that they emailed the "Check Fraud Defendants"—later defined as Day Pitney; Day Pitney attorneys Livorsi and Amer; Hill Wallack; Hill Wallack attorneys Kahme, Kelner, and O'Donohue; Shellpoint, MetLife, Bank of America, FleetBoston, and Citibank. (FAC ¶¶ 89; 135 n.120.)

[5] On June 8, Plaintiffs filed a grievance against Livorsi (Day Pitney) and Kahme and Kelner (Hill Wallack). (FAC ¶¶ 16 nn.9, 16–17; 136.) On June 13, they filed a grievance against O'Donohue (Hill Wallack), who had responded to the first OAE grievance on behalf of the Hill Wallack attorneys. (*Id.* ¶¶ 16 n.18; 140–41.) Plaintiffs allege that O'Donohue and an OAE employee, Defendant Saunders, subsequently "colluded" by "refusing to docket" his OAE grievances. (*Id.* ¶¶ 16 n.20; 146–47.)

4

Check to Plaintiffs. (*Id.* ¶ 109.) Based on a Google search of the routing numbers on the Check's reverse side, Plaintiffs purportedly determined that, on May 30 and 31, 2024, the Check had been endorsed by Citibank and either FleetBoston or Bank of America. (*Id.* ¶ 109.)[6]

Plaintiffs suggest that they have still not received the Check funds paid by CSAA. (*See id.* ¶ 170.) They say they were unable to repair their home without those funds and accordingly sustained additional water damage between July and September of 2024.[7] (*Id.* ¶¶ 63–64, 66, 70.)

ii.    Sheriff's Sale Allegations[8]

The following year, MetLife sought to enforce a final judgment and writ of execution to foreclose upon Plaintiffs' home.[9] (*Id.* ¶ 183.) A Sheriff's Sale of the property was noticed in February and March of 2025 and scheduled to occur on April 14, 2025. (*Id.* ¶¶ 185–86.) Plaintiffs appealed "multiple orders" in the state court foreclosure action, and on April 11, 2025 and May 8,

---

[6] Plaintiffs say they filed complaints about the foregoing with the New Jersey "Department of Insurance" ("DoI") as well as numerous other governmental entities. (FAC ¶ 73; *see id.* ¶ 72 (stating that Plaintiffs also filed complaints with the Consumer Financial Protection Bureau, Federal Trade Commission, Office of the Comptroller of the Currency, and New Jersey Office of the Attorney General); *see also id.* ¶ 64 n.78; 72–73 (distinguishing between the New Jersey Department of Banking and Insurance ("DoBI"), which appears to still be investigating Plaintiffs' complaint, and the DoI, which closed Plaintiffs' case).) Plaintiffs sue DoI and DoI investigator Robert Anderson for their handling of Plaintiffs' complaint, including Anderson's alleged "collusion" with the "Insurance Fraud Defendants" by "rubber stamp[ing]" the investigation. (*Id.* ¶¶ 16 n.26; 149–50.)

[7] Between July and September 2024, Plaintiffs noticed additional water damage to their residence, which they contemporaneously conveyed to CSAA through their assigned claim examiner, Defendant McCormack. (FAC ¶¶ 16 n.22; 63–64; 66–68; 70.) CSAA eventually arranged to reinspect Plaintiffs' property on October 17, 2024, then denied Plaintiffs' supplemental claim for additional water damage on October 23, 2024. (*Id.* ¶¶ 76–78.)

[8] Plaintiffs' FAC contains many of the same or similar factual allegations as in their initial Complaint, with the exception of the below new allegations, claims, and Defendants related to the Sheriff's Sale and foreclosure action.

[9] MetLife brought this foreclosure action against the Sequeiras in November 2021 in state court based on missed mortgage payments. *See* Foreclosure-III, *supra* note 2. The Sequeiras attempted to remove the case to the District of New Jersey in December 2021, but it was remanded for lack of subject matter jurisdiction. *See Metro. Life Ins. Co.*, 2022 WL 1443732, at *3 ("A cause of action to foreclose a mortgage does not arise under federal law." (quoting *Hudson City Sav. Bank, FSB v. Barrow*, No. 16-4190, 2016 WL 7377102, at *2 (D.N.J. Dec. 19, 2016))). Plaintiffs appear to allege that MetLife obtained the relevant writ of execution in December 2024, then sought to enforce it in 2025. (FAC ¶ 185.)

2025, Plaintiffs personally served the "MCSO Defendants"[10] with notices stating that the final judgment and writ of execution "were void for lack of jurisdiction" in light of their pending appeal. (*Id.* ¶¶ 189, 194.) The MCSO Defendants "nevertheless went ahead with the Sheriff's Sale of the Property." (*Id.* ¶ 188.) As of the filing of Plaintiffs' FAC, the MetLife foreclosure action ("Foreclosure-III") was "presently on appeal." (*Id.* at 1 n.1.) It is unclear from the FAC whether Plaintiffs contend their property was eventually foreclosed upon or sold via Sheriff's Sale.

### iii. Summary of Claims

Based on the foregoing facts, Plaintiffs assert that Defendants violated a myriad of federal and New Jersey state laws. Plaintiffs allege violations of three federal laws: the Truth in Lending Act ("TILA") (Counts 1–2), the Real Estate Settlement Procedures Act ("RESPA") (Counts 46–53, 63–65, 91–94, 98–99, and 103–06), and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts 175–238). Plaintiffs also bring the following state-law claims: violations of the New Jersey Unfair Claims Settlement Practices Act ("UCSPA") (Counts 3–32, 36–39, and 95–97), New Jersey Consumer Fraud Act ("NJCFA") (Counts 45, 58–62, 70–76, 81–90, 100–02, and 108–16), New Jersey RICO statute ("NJ RICO") (Counts 239–305), New Jersey Constitution, Article I, ¶ 1 (Count 306), and New Jersey Statutes Annotated §§ 2A:17-8 and 2A:17-36 (Counts 308[11] and 310–11), as well as state-law claims of Breach of Contract (Counts 43, 54–56, 66–68, and 77–79), Breach of the Implied Covenant of Good Faith and Fair Dealing

---

[10] The "MCSO Defendants" refer to MCSO, Sheriff Golden, and "MCSO's Officers and Employees 1–5." (FAC ¶ 536.)

[11] The Court notes that Plaintiffs skip Count 307 (instead asserting Count 306 under the New Jersey Constitution, then Count 308 under New Jersey Statutes Annotated § 2A:17-8) and repeat Count 310 (asserting "Collusion" under Counts 309 and 310, then violations of New Jersey Statutes Annotated § 2A:17-36 under Counts 310 and 311). Plaintiffs' unwieldy use of roman numerals for each count—from "Count I" to "Count CCCXI"—no doubt contributed to the misnumbering and confusion.

(Counts 44, 57, 69, 80, and 107), and Fraudulent Conversion (Count 174).[12] Plaintiffs also bring claims of "Collusion" (Counts 33–35, 40–42, 117–72, and 309–10) and "Presentment" (Count 173).[13]

## II.    LEGAL STANDARD

Because the Sequeiras have been granted *in forma pauperis* status, (ECF No. 11), the Court has a statutory obligation to screen their FAC under 28 U.S.C. § 1915(e)(2)(B). *See In re Wolf*, 696 F. App'x 599, 600 (3d Cir. 2017) (directing that district courts are "required to screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) before issuing any summonses"). Pursuant to this statute, the Court may dismiss any claims that are "(1) . . . frivolous or malicious; (2) fail[] to state a claim upon which relief may be granted; or (3) seek[] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). That is, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a court must be mindful to hold a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), this leniency is not boundless, *see Vogt v. Wetzel*, 8 F.4th

---

[12] The Court notes that, as with Plaintiffs' initial Complaint, the claims in the FAC primarily arise out of state law. (ECF No. 11 at 3.)

[13] Plaintiffs' claims are set forth in paragraphs 195–554 of the FAC. Plaintiffs assert multiple counts under the same statutes and statutory provisions, including against the same Defendants, for different alleged violations of those laws. Many of these counts are non-consecutive. For example, Plaintiffs assert 21 non-consecutive counts of RESPA violations by the "Check Fraud Defendants"—Counts 46–53, 63–65, 91–94, 98–99, 103–06—which are interrupted by counts asserting various contractual violations by the Check Fraud Defendants (Counts 43–44) and Insurance Fraud Defendants (Counts 54–57, 66–69, and 77–80, in relevant part), NJCFA violations by the Check Fraud Defendants (Counts 58–62, 70–76, 81–90, and 100–02, in relevant part), and UCSPA violations by the Check Fraud Defendants (Counts 95–97).

182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)); *Arunga v. AIPAC*, No. 93-24, 1993 WL 294074, at *3 (E.D. Pa. July 29, 1993) ("[T]here is a limit to the indulgence of the law and the resultant imposition on the defendants and the courts in pro se cases.").

A complaint's claims must also be supported by "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each averment must be 'simple, concise, and direct.'" *Washington v. Warden SCI-Greene*, 608 F. App'x 49, 52 (3d Cir. 2015) (per curiam) (quoting Fed. R. Civ. P. 8(d)(1)). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). At its core, the purpose of a pleading is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a court should liberally construe the pleadings of a pro se plaintiff, the complaint must still comply with the pleading requirements of Rule 8." *Prelle v. United States*, No. 22-1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (per curiam) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 246 (3d Cir. 2013)); *see also Untracht v. Fikri*, 368 F. Supp. 2d 409, 413 (W.D. Pa. 2005) ("[B]asic pleading requirements under the Federal Rules of Civil Procedure apply to self-represented and counseled plaintiffs alike.").

## III.    DISCUSSION

Despite the abundantly clear and painstaking admonitions of this Court (not to mention other courts, *see infra*), Plaintiffs' FAC runs *even more* egregiously afoul of Rule 8 than their initial Complaint—it is over 75 pages, 330 paragraphs, and 50 counts *longer* than Plaintiffs' already "sprawling 102-page, 217-paragraph, 255-count [initial] Complaint." (ECF No. 11 at 7.) The FAC approaches 200 pages, with more than 500 paragraphs, and more than 300 counts. It

8

contains a stunning almost 200 footnotes. It names additional Defendants, for a total of 25, and now asserts entirely new claims and factual allegations against those Defendants related to the purported Sheriff's Sale of Plaintiffs' property.[14] (FAC ¶¶ 183–94, 535–54.)

Yet again, the FAC lacks "a short and plain statement" showing entitlement to relief, and the allegations therein are anything but "simple, concise, and direct." Fed. R. Civ. P. 8(a), (d)(1); *see Washington*, 608 F. App'x at 52 (finding *pro se* plaintiff's 174-page amended complaint "anything but 'simple, concise, and direct'" and affirming dismissal under Rule 8); *Rogers v. Morrice*, No. 12-7910, 2013 WL 356196, at *2 (D.N.J. Jan. 29, 2013) ("Although the Complaint uses plain language, and Plaintiff provides a Table of Contents . . . the Complaint's thicket of background detail and evidentiary matter makes this a case where length and complexity may doom a complaint by obfuscating the claim's essence." (internal quotation marks omitted)); *Mendez v. Draham*, 182 F. Supp. 2d 430, 433 (D.N.J. 2002) ("It is this very prolixity that makes the Complaint unclear and incomprehensible. . . . In no way does the Complaint conform to the concept of 'notice pleading' embodied in Rule 8."). It is far from clear that Plaintiffs even attempted to comply with Rule 8 and the Court's directives as to the same, as their FAC plainly fails to cure—and instead exacerbates—the fundamental Rule 8 deficiencies already explained at length by this Court. (*See* ECF No. 11 at 6–9.)

In particular, Plaintiffs continue to violate Rule 8's "prohibition on group pleading."[15] *Dante v. Schwartz*, No. 20-01047, 2022 WL 1104996, at *4 (D.N.J. Apr. 13, 2022); *see Sheeran*

---

[14] Newly sued are the "MCSO Defendants" (the Sheriff's Office and Sheriff, plus unnamed employees); three more entities that allegedly owned and/or serviced Plaintiffs' mortgage (LSF8, Caliber, and Goldman Sachs); and another Day Pitney attorney (Joy H. Sperling). (*See* FAC ¶ 17. *Compare supra* note 1 (listing 25 Defendants named in the FAC), *with* ECF No. 11 at 2 n.3 (listing 19 Defendants named in initial Complaint).)

[15] By the Court's count, Plaintiffs use at least 19 different group identifiers to collectively refer to seemingly and mind-numbingly infinite configurations of Defendants: MCSO Defendants, TILA Defendants, TILA Defendants-I, TILA Defendants-II, Insurance Fraud Defendants, Check Fraud Defendants, RICO

9

*v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (collecting cases). In many instances, the FAC advances assertions against groups of Defendants without meaningfully clarifying each Defendant's alleged individual liability. For instance, in Counts 81–90 of the FAC, Plaintiffs allege that the "Check Fraud Defendants," *see supra* note 4, violated the NJCFA by, *inter alia,* "'unconscionably' demanding on a recorded line that the Check be sent to Counsel rather than to the Servicer of the Note and Mortgage." (FAC ¶ 352.) In a corresponding factual assertion (which appears almost 300 paragraphs earlier in the FAC), Plaintiffs allege that they contacted Shellpoint—one of *twelve* Check Fraud Defendants— telephonically on May 6, 2024, on a recorded line to determine how to have the Check endorsed by Shellpoint. (*Id.* ¶ 81.) Therefore, Plaintiffs' own factual assertions indicate that their NJCFA claim regarding the telephonic demand implicates Shellpoint alone. Yet this claim is included among a bevy of other NJCFA claims within Counts 81–90, which Plaintiffs collectively advance against the "Check Fraud Defendants" as a whole. The Court cannot determine—based on Plaintiffs' own factual narration—how this NJCFA claim pertains to the other eleven Check Fraud

---

Defendants, RICO-I Defendants, RICO-II Defendants, Bank Defendants, Bank Forgery Defendants, Forgery Defendants, Accessory-After-The-Fact Defendants, DP Firm Defendants, HW Firm Defendants, Attorney Defendants-I, Attorney Defendants-II, DoI Defendants, and OAE Defendants. (FAC ¶¶ 17(x) n.27; 38 n.64; 39 n.65; 41 n.68; 47 n.73; 48 n.74; 135 n.120; 151 n.128; 154(a); 154(c); 154(d) nn.138–39; 257; 391; 401; 456; 522; 526; 531.) As explained hereinbelow, these groupings are problematic, as they contravene the specificity and fair notice required by Rule 8.

Plaintiffs' own delineations illustrate the ambiguity created by their use of group identifiers. For example, Plaintiffs state that "'TILA Defendants–II' refers to one or more, or, collectively, to Sperling, Livorsi, LSF8, and Caliber.'" (*Id.* ¶ 47 n.73.) Based on this definition, neither the Court nor any given Defendant can know with any degree of certainty whether a reference to "TILA Defendants–II" implicates one, two, three, or all of the Defendants listed within that grouping. Worse still, Plaintiffs explicitly treat some Defendants as interchangeable, asserting that "[a]ll references to Livorsi include references to Amer" and, "[w]here the context permits, . . . all references to CSAA–McCormack include references to Ellis." (*Id.* ¶¶ 17(d) n.9; 17(r) n.23.)

10

Defendants, who, by Plaintiffs' own account, had no role in issuing the telephonic instructions that Plaintiffs allegedly received from Shellpoint.[16]

If each Defendant must wade through the FAC's "thicket of background detail and evidentiary matter" to identify which specific claims are brought against them, then the FAC has clearly failed in its obligation under Rule 8 to provide "fair notice" of each claim and its underlying facts. *Rogers*, 2013 WL 356196, at *2; *see Dante*, 2022 WL 1104996, at *3 ("A plaintiff must allege facts that 'establish each individual [d]efendant's liability for the misconduct alleged.' Group pleading fails to meet the plausibility requirement." (alteration in original) (citation omitted)); *see also Mendez*, 182 F. Supp. 2d at 433 ("Only through superhuman patience, effort, and insight, could any attorney review the allegations of the Complaint and make paragraph-by-paragraph responses."). "To the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading." *Dante*, 2022 WL 1104996, at *3 (cleaned up) (quoting *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015)); (*see* ECF No. 11 at 8 ("Plaintiffs' federal RICO claims allege predicate acts of racketeering by a vague group of 'RICO Defendants' as a whole. The lack of explicit references to named Defendants makes it impossible to give these Defendants 'fair notice' of the claims asserted and the grounds upon which those claims rest." (citations omitted))). Such scattershot, blunderbuss allegations appear to be Plaintiffs' modus operandi—yet such stratagem is explicitly foreclosed by the Federal

---

[16] Notably, in the first paragraph under Counts 81–90 of the FAC, Plaintiffs "incorporate[] by reference" the factual allegations set forth in paragraphs 98–102 of the FAC. (FAC ¶ 350.) That paragraph range does not include the relevant allegation about the May 6, 2024, recorded telephone call. (*Id.* ¶ 81.) Thus, the Check Fraud Defendants would be compelled not only to chase down each of Plaintiffs' incessant cross-references (to earlier paragraphs as well as footnotes) but also to scour still additional parts of the voluminous FAC to piece together the misconduct Plaintiffs contend they committed in violation of the NJCFA.

11

Rules of Civil Procedure as posing an onerous, unfair burden in time and expense on those who are required to respond by answer or motion to defend themselves. *See, e.g.*, Fed. R. Civ. P. 8, 10, 12, 20.

The United States District Court for the District of Columbia made a similar finding when denying the Sequeiras' proposed amended complaint in a related action against the Federal Deposit Insurance Corporation, writing, "The Sequeiras' proposed second amended complaint is neither short nor plain. It is over 200 pages long. And it raises new claims against dozens of new defendants, sweeping in virtually everyone who had anything to do with the Sequeiras' mortgage, including the Sequeiras' prior attorneys, various financial institutions, and employees affiliated with those institutions." *FDIC*, 2024 WL 3835561, at *3 (cleaned up). This language, which the Court quoted in its First Screening Opinion, is apropos once again—and even more so. (ECF No. 11 at 7 n.10.)

To start with the obvious, the same reasoning applies here. The FAC likewise "sweep[s] in virtually everyone who had anything to do with the Sequeiras' mortgage"—including Plaintiffs' home insurance company, various financial institutions, multiple law firms, the Monmouth County Sheriff's Office, and employees thereof. "[A] pleading . . . that intermingles a wide number of claims based on a variety of legal theories . . . runs afoul of the Federal Rules." *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *3 (D.N.J. Aug. 6, 2018) (omissions in original); *see also U.S. ex rel. Dattola v. Nat'l Treasury Emp. Union*, 86 F.R.D. 496, 499 (W.D. Pa. 1980) (dismissing complaint under Rule 8 and further noting that plaintiff "likely violat[ed] . . . Rule 20 concerning the proper joinder of parties defendant" because "[i]t [was] obvious that the alleged liability of most of these defendants does not arise out of the same transaction or series of transactions").

12

What is more, upon closer inspection, the Court notes that the proposed amended complaint the Sequeiras sought to file in the FDIC case is largely the same as the initial Complaint they filed in the instant action, down to Plaintiffs' allegations about their insurance check and OAE grievances. *See Sequeira v. FDIC*, No. 23-2095 (D.D.C. June 26, 2024), ECF No. 26 at 23–259. It appears that, after being denied leave to amend in their suit against the FDIC, the Sequeiras slightly modified their proposed pleading and commenced a new suit in the District of Columbia, which was later transferred to this District. (*See* ECF Nos. 1, 6.) The Sequeiras have thus been *repeatedly* warned about Rule 8's requirements and their failure to comply therewith, not only in general but also in connection with their present claims and allegations. *See FDIC*, 2024 WL 3835561, at *3–4; (ECF No. 11 at 3–9).

In short, the Court is compelled to again conclude that "Plaintiffs' voluminous and difficult-to-follow [FAC] fails to effectuate the 'clarity and brevity' required by the Federal Rules." (ECF No. 11 at 9 (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d at 702)); *see Blount v. TD Bank, N.A.*, No. 12-18805, 2022 WL 4354640, at *2 (D.N.J. Sept. 20, 2022) ("A complaint that reads like a plaintiff's personal 'diary' and is 'rambling and confusing' does not meet the standard under Rule 8(a)(2)." (quoting *Pilkey v. Lappin*, No. 05-5314, 2006 WL 1797756, at *1 (D.N.J. June 26, 2006))). "[A] district court acts within its discretion when it dismisses an excessively prolix and overlong complaint, particularly where a plaintiff declines an express invitation to better tailor [their] pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019). That is certainly the case here—though this Court offered Plaintiffs an opportunity to amend their original Complaint after explaining the deficiencies contained therein, their FAC remains, and is arguably even more, "excessively prolix and overlong." *Id.*

13

Adding insult to injury, Plaintiffs' FAC warrants dismissal for still additional reasons, which the Court will outline by way of a few examples for purposes of illustration. First, Plaintiffs' claims under the UCSPA (Counts 3–32, 36–39, and 95–97),[17] Uniform Commercial Code ("UCC") (Count 173), and New Jersey Statutes Annotated §§ 2A:17-8 and 2A:17-36 (Counts 308 and 310–11) must be dismissed for lack of a private right of action. Plaintiffs assert multiple violations of the UCSPA, but "New Jersey courts have declared it 'well-settled that insureds have no private cause of action under the [UCSPA].'" *Salit Auto Sales, Inc. v. CCC Intelligent Sols. Inc.*, No. 19-18107, 2021 WL 3783110, at *6 (D.N.J. Aug. 26, 2021); *see ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n*, 652 F. Supp. 2d 552, 563 (D.N.J. 2009); *Pickett*, 621 A.2d at 451. Plaintiffs' claim of "Presentment," seemingly brought under Section 3-501 of the UCC, fails for the same reason. *See Dixie v. KeyBank Nat'l Ass'n*, No. 24-120, 2025 WL 2420878, at *4 n.6 (W.D. Pa. Aug. 21, 2025) ("[T]he UCC is not a statute with a private right of action." (cleaned up)); *see also id.* ("[T]he U.C.C. is not a federal law, nor is it a state law, and it provides Plaintiff with no cause of action."). To the extent Plaintiffs do not intend to bring this claim under the UCC, they point to no federal or state law basis for a "Presentment" claim. Finally, the Court likewise dismisses Plaintiffs' claims under New Jersey Statutes Annotated §§ 2A:17-8 and 2A:17-36. The former statute provides that a writ of execution "shall not issue" until the resolution of a pending appeal thereof, and the latter describes certain adjournments a sheriff "may" make when selling real estate pursuant to a writ of execution. N.J. Stat. Ann. §§ 2A:17-8, 17-36. Neither statute

---

[17] Plaintiffs incorrectly cite New Jersey Statutes Annotated § 17B:30-13.1, as opposed to § 17:29B-4. Although both sections of the UCSPA contain analogous provisions, the former applies only to the life and health insurance industries, not at issue here. *See* N.J. Stat. Ann. §§ 17:29B-1, 17B:30-1; *Pickett v. Lloyd's*, 621 A.2d 445, 451 (N.J. 1993).

provides a private right of action, and the state foreclosure action, including Plaintiffs' appeal therein, is the proper forum for any allegations of procedural irregularities or violations.[18]

Next, Plaintiffs fail to state a claim under TILA (Counts 1–2) against Caliber, Shellpoint, Sperling, Livorsi, LSF8, and Goldman Sachs, i.e., all Defendants other than MetLife. First, the TILA "imposes liability only on purchasers and assignees of mortgages." *Franklin v. Fin. Freedom Acquisition, LLC*, No. 12-7884, 2014 WL 1316093, at *3 (D.N.J. Apr. 1, 2014) (quoting *Stump v. WMC Mortg. Corp.*, No. 02–326, 2005 WL 645238, at *10 (E.D. Pa. Mar.16, 2005)). It does not impose liability on loan servicers or any other persons or entities. *See id.* ("[L]oan servicers cannot be liable under TILA." (quoting *Stump*, 2005 WL 645238, at *10)); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998) ("Congress enacted TILA to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices."); *Barnes v. Carrington Mortg. Servs., LLC*, No. 15-6465, 2016 WL 3018693, at *1 (D.N.J. May 24, 2016) (explaining that the TILA "refers only to a creditor's liability"). Therefore, Defendants Caliber, Shellpoint, Sperling, and Livorsi—none of whom owned Plaintiffs' mortgage—cannot be held liable under the TILA. (FAC ¶¶ 17(c) n.8; 17(d) n.9; 17(g) n.12; 17(i) n.14; *see id.* ¶¶ 17(f) n.11; 17(h) n.13; 39(a) (alleging ownership by Defendants LSF8, Goldman Sachs, and MetLife only).)

---

[18] Federal courts lack authority to enjoin state court foreclosure proceedings, including sheriff's sales of foreclosed upon property. *Poussaint v. Mendlowitz*, No. 24-5387, 2024 WL 4543062, at *2 (E.D. Pa. Oct. 22, 2024) (collecting cases); *Mason v. Bank of Am., N.A.*, No. 13-3966, 2013 WL 5574439, at *5, *7 (E.D. Pa. Oct. 10, 2013). Plaintiffs cannot sidestep this clear bar by bringing their claims under miscellaneous state procedural rules. The same is true regardless of whether the sheriff's sale already occurred, regardless of whether Plaintiffs' appeal remains pending, and regardless of whether Plaintiffs actually raised these objections in the state court proceedings. Absent a final judgment, Plaintiffs' claim to damages is speculative and tenuous at best. (*See* FAC ¶¶ 192, 544.) If a final judgment has issued, Plaintiffs would be barred from asserting these claims under, *inter alia, Rooker-Feldman* and the doctrine of *res judicata*. *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 104–05 (3d Cir. 2012); *Russo v. Glass Real Est. Co.*, 204 F. App'x 157, 159 (3d Cir. 2006) (per curiam).

15

Furthermore, it is apparent from the face of the FAC that Plaintiffs' TILA claims against LSF8 and Goldman Sachs are likely time barred. *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010) ("[W]hen a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 . . . ."); *see Smith v. Del. Cnty. Ct.*, 260 F. App'x 454, 455 (3d Cir. 2008) (per curiam) ("[A] district court's screening authority under § 1915(e) 'differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.'"). By Plaintiffs' own account, LSF8 owned Plaintiffs' mortgage from May 9, 2014 to January 31, 2019, and Goldman Sachs owned Plaintiffs' mortgage from January 31, 2019 to December 30, 2019, and from April 3, 2020 to October 8, 2021. (FAC ¶ 39(a).) Plaintiffs filed suit in December of 2024—past TILA's one-year or three-year statute of limitations as to these Defendants. (*See id.* ¶¶ 200, 205 (seeking both recission and damages)); 15 U.S.C. § 1640(e); *Franklin*, 2014 WL 1316093, at *4; *see also Burress v. Freedom Mortg. Corp.*, No. 20-15242, 2021 WL 4059831, at *2–3 (D.N.J. Sept. 7, 2021); *McElduff v. U.S. Bancorp*, No. 05-657, 2006 WL 995566, at *2 (D.N.J. Apr. 12, 2006). For the same reasons, any alleged TILA violations by MetLife during its first "period[] of ownership" from December 30, 2019 to April 3, 2020 are also appear to be time barred. (FAC ¶ 39(a).)

Similarly, Plaintiffs' RESPA claims (Counts 46–53, 63–65, 91–94, 98–99, and 103–06), which they assert against the Check Fraud Defendants, are barred against all Defendants apart from Shellpoint. RESPA imposes obligations on loan servicers only. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 764 (3d Cir. 2009) ("Statutes like RESPA are enacted to protect consumers from unfair business practices by giving consumers a private right of action against service providers."); *In re Coppola*, 596 B.R. 140, 152 (Bankr. D.N.J. 2018) ("RESPA is a

16

consumer protection statute that requires loan servicers to provide timely written responses to borrowers under certain circumstances."); *see also Hawk v. Carrington Mortg. Servs., LLC*, No. 14-1044, 2016 WL 4433665, at *1 (M.D. Pa. Aug. 17, 2016) ("[B]y its terms Section 2605 only imposes a duty upon loan servicers . . . . Likewise the regulations enacted pursuant to RESPA speak solely in terms of loan servicers. . . . Given this plain statutory text, it has been held that mortgage holders, who are not servicing loans, are not liable under RESPA for the alleged conduct of loan servicers." (collecting cases)). Of the twelve Check Fraud Defendants, Shellpoint is the only Defendant that Plaintiffs allege serviced their mortgage loan. (FAC ¶¶ 17(i) n.14; 39(b).) As such, Plaintiffs fail to state a RESPA claim against Day Pitney; Day Pitney attorneys Livorsi and Amer; Hill Wallack; Hill Wallack attorneys Kahme, Kelner, and O'Donohue; MetLife; Bank of America; FleetBoston; and Citibank.[19]

Finally, Plaintiffs' collusion claims (Counts 33–35, 40–42, 117–72, and 309–10) are not cognizable as standalone counts. Plaintiffs seek to hold certain groups of Defendants liable for "colluding" with other groups of Defendants to violate statutes such as the NJCFA, RESPA, and federal and NJ RICO—but none of these statutes allow claims for "collusion," nor is "collusion" itself an independent basis for liability. Plaintiffs contend, for example, that the Insurance Fraud Defendants" *violated* the UCSPA and NJCFA (Counts 3–32 and 36–39) and that the "DoI Defendants *colluded with* the Insurance Fraud Defendants to violate those same statutes (Counts 33–35 and 40–42). Plaintiffs similarly allege that "Attorney-Defendants I" *colluded with* other Defendants to violate RESPA, NJCFA, federal and state RICO, and New Jersey Statutes

---

[19] The Court previously pointed out the same fatal problems with Plaintiffs' RESPA and TILA claims, yet Plaintiffs ignored the Court's guidance and reasserted these claims against identical Defendants in the FAC. (*See* ECF No. 11 at 8 ("Plaintiffs allege their RESPA and TILA claims against 'Defendants' as a whole. However, Plaintiffs presumably did not intend to bring these claims against all Defendants, as the majority of Defendants are neither lenders nor service providers to Plaintiffs." (collecting cases)).)

Annotated §§ 2A:17-8 and 2A:17-36 (as well as breach of contract claims), (Counts 135–72, 309–10), but they do not bring claims against the Attorney-Defendants I for *violating* those laws.[20] Plaintiffs cannot use the term "collusion" to circumvent the well-established fact that, "under New Jersey Law, a civil conspiracy is not an independent cause of action, but rather a liability expanding mechanism which exists only if Plaintiffs can prove *the underlying independent wrong.*" *Tadros v. City of Union City*, No. 10-2535, 2011 WL 1321980, at \*9 (D.N.J. Mar. 31, 2011) (cleaned up) (emphasis added). Plaintiffs also bring "Collusion" claims related to the conduct of the OAE Defendants (Counts 117–24) and DoI Defendants (Counts 125–34) in handling Plaintiffs' complaints with those entities. Plaintiffs point to no authority that would allow them to bring suit for such conduct, and certainly not for collusion to engage in such conduct. Thus, all of Plaintiffs' "Collusion" Counts must be dismissed.

For the reasons set forth above, the Court finds that "dismissal with prejudice [is] warranted in this case." *Stephanatos v. Cohen*, 236 F. App'x 785, 787 (3d Cir. 2007) (per curiam) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d at 703–04) (affirming with-prejudice dismissal of *pro se* plaintiff's 150-page amended complaint, following prior dismissal without prejudice of 400-page complaint); *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002) (explaining

---

[20] Put another way, by specifically alleging distinct "collusion" claims, but not claims directly under the relevant statutes, Plaintiffs contend *not* that the subject Defendants committed the underlying independent wrongs, but that they colluded with those Defendants that did. Plaintiffs may well recognize that any such substantive claims would likely fail, given that they allege no commercial practices by the DoI Defendants or Attorney-Defendants I that would create liability under the NJCFA, *see* N.J. Stat. Ann. § 56:8–2, none of those Defendants are loan servicers who may be held liable under RESPA, *see supra*, there is no private right of action under the UCSPA or under New Jersey Statutes Annotated §§ 2A:17-8 or 2A:17-36, *see supra*, Plaintiffs allege no contractual relationships with these Defendants for purposes of a breach of contract suit, and Plaintiffs do not plead with sufficient particularity that Attorneys-Defendants I committed the fraudulent predicate acts of racketeering that they allege under RICO, *see Va. Sur. Co. v. Macedo*, No. 08-5586, 2010 WL 3429530, at \*5 (D. N J. Aug. 27, 2010) (federal RICO) (citing Fed. R. Civ. P. 9(b)); *Zanger v. Bank of Am., N.A.*, No. 10-2480, 2011 WL 3501867, at \*2 (D.N.J. Aug. 10, 2011) (same as to NJ RICO); (ECF No. 11 at 9 n.12 (collecting cases)).

18

that a *pro se* plaintiff must generally be granted an opportunity to amend a deficient complaint before dismissal is final and with prejudice, unless amendment would be "inequitable or futile"); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."); *Defalco v. Rutgers Univ. Police Dep't*, No. 15-6607, 2019 WL 2591031, at *5 (D.N.J. June 25, 2019) ("When a plaintiff chooses to ignore instruction from the court, the plaintiff does so at the plaintiff's peril; the plaintiff's deficient claims will be dismissed with prejudice." (cleaned up) (quoting *Despot v. Keystone Insurers Grp., Inc.*, No. 08-0166, 2008 WL 3837395, at *8 (M.D. Pa. Aug. 13, 2008))).

Plaintiffs were given the opportunity to amend and a roadmap as to how to cure the deficiencies in their initial Complaint.[21] Plaintiffs nevertheless filed an amended complaint that again utterly fails to comply with basic pleading requirements, thus demonstrating that they are either unwilling or unable to conform with the requirements of Rule 8 and with this Court's clear and painstaking directives. Under these circumstances, the Court concludes that amendment would be futile and dismissal with prejudice is appropriate. *See Stephanatos*, 236 F. App'x at 787; *Calif. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 165–66 (3d Cir. 2004) ("In light of the clear guidance the District Court afforded to Plaintiffs, Plaintiffs' disregard of that advice, and Plaintiffs' failure to propose additional amendments that would remedy the pleading deficiencies of the Second Amended Complaint, the District Court did not abuse its discretion in denying Plaintiffs leave to amend their deficient complaint."); *Freeman v. TD Bank*, No. 25-1394, 2025 WL

---

[21] It is worth reiterating that Plaintiffs herein disregard the same guidance they have been given across cases. *See supra* note 2; *FDIC*, 2024 WL 3835561, at *3–4; *see also Despot*, 2008 WL 3837395, at *8 (concluding that dismissal with prejudice "is appropriate because [Plaintiff] was on notice of the deficiencies highlighted herein, courtesy of the federal courts in which his lawsuits have been adjudicated in the past").

3268455, at *2 (3d Cir. Nov. 24, 2025) (per curiam) (affirming denial of leave to amend where "the [district] court clearly explained why the original complaint was deficient and it need not have provided more advice" (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013))); *Brown v. Cantineri*, No. 14-6391, 2017 WL 481467, at *2 (D.N.J. Feb. 6, 2017) ("Because I have already given [plaintiff] one opportunity to amend, this dismissal is with prejudice."); *see also Dattola*, 86 F.R.D. at 499 (dismissing *pro se* plaintiff's complaint with prejudice under Rule 8 and reasoning that plaintiff "exceeded the outer limits of society's obligation to pro se litigants," such that "permit[ting] plaintiff to litigate these claims would, in our judgment, constitute an abuse of the defendants and the judicial system").

## CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Complaint is **DISMISSED** with prejudice. An appropriate Order accompanies this Memorandum Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: July 20, 2026

21